**SALINGER et al. v. LINCOLN NAT. LIFE INS. CO.**

No. 8885.

Circuit Court of Appeals, Eighth Circuit.

Oct. 14, 1931.

Rehearing Denied Nov. 30, 1931.

B. I. Salinger, of Carroll, Iowa (George A. Bangs, of Grand Forks, N. D., on the brief), for appellants.

Herbert G. Nilles, of Fargo, N. D. (John S. Frame and Daniel B. Holt, both of Fargo, N. D., and R. F. Baird, of Fort Wayne, Ind., on the brief), for appellee.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge.

This is an appeal from a decree foreclosing a mortgage entered in the district court of North Dakota.

The mortgage declared upon was executed on July 28, 1927, by Lucy M. Salinger, B. I. Salinger, her husband, and Ward Ferguson. The land covered by the mortgage was located in Dickey county, N. D. It was given to secure a note for $5,500, payable five years after date, with interest at the rate of 5½ per cent., payable annually. The foreclosure was prayed for the nonpayment of the first annual installment of interest, $302.75, due August 1, 1928. It was alleged that the failure to pay this interest rendered the entire debt due on account of the acceleration clause in the mortgage. The bill further declared that the defendants were entitled to a credit of $500 on the principal note, and to a credit on the first interest installment for accrued interest from July 28, 1927, to September 12, 1927.

The appellants answered that the plea of reduction of the principal was immaterial because the principal did not fall due until August 1, 1932, and there was no stipulation in the mortgage for the mortgagor to pay any part of the principal before maturity, and none giving power to the mortgagee to reduce said principal sum by the application of any money belonging to appellants; that the mortgagee, without authority, retained from the proceeds of the mortgage and out of the said $5,500 the sum of $671.25; that when the interest fell due on August 1, 1928, appellee had said sum of $671.25, belonging to the mortgagors; they further answered that they were willing to have applied a portion of the sum withheld by the appellee in satisfaction of the interest due, and they tendered payment out of the said sum; and, in a cross-bill, prayed for a decree for the balance. The reply to the answer was a general denial.

The facts, in brief, are that the owners of the land, Lucy M. Salinger and Ward Ferguson, authorized B. I. Salinger to secure a loan upon the same. He applied to Hart Farm Mortgage Company, Aberdeen, N. D., for this purpose. The application for a loan of $7,000 was made out by Mr. Salinger and left with the mortgage company. An effort was made to secure such a loan without success and the matter was, in June, 1927, taken up

with the McKay Mortgage Company of Fargo, N. D., the loan agents for appellee herein, the Lincoln National Life Insurance Company. The McKay Company declined the loan, and stated that a loan of $5,000 would be the limit.

Mr. Salinger was advised of the situation, and in reply stated that the applicants would accept loan of $5,500, provided they were permitted to pay $100 or any multiple thereof on the principal on any interest payment day. When the McKay Company was notified, it stated in July, 1927, that if applicants would spend $500 for repairs and paint on the building it would be inclined to make the loan of $5,500. It further stated it would be advisable to make this improvement during that year. This information was presented to Mr. Salinger, and he replied that, if the loan of $5,500 were made with provision for payments on principal as above suggested, within sixty days the repairs would be made. When this matter was presented to the McKay Company, it stated on July 22d that it was recommending the loan of $5,500 providing for an annual reduction of $250 on the principal the first and second years, which would reduce the loan to $5,000, and added it would retain $500 of this loan until the improvements were completed. On July 28th, the McKay Company forwarded to the Hart Company the mortgage and note for execution. The papers were executed and returned. There was incorporated in the mortgage no provision to the effect that the mortgagee should retain $500 until the improvements were made on the buildings, and no provision to the effect that payments might be made on the principal prior to the maturity of the obligation.

After the execution of the papers, the McKay Company disposed of the proceeds of the loan to the extent of $4,837.21, by paying abstract fees, current and delinquent taxes, and satisfying an existing mortgage. This left a balance due the mortgagors of $662.79. $500 was withheld awaiting the repair of the premises, and a check for $163.79 was forwarded the Hart Company for delivery to the mortgagors. This check was never received and cashed, but was held by the Hart Company and paid into court at the time of the trial. Appellants refused to sign a receipt approving this disposition of the proceeds of the loan, but their refusal was based alone upon the retention of the item of $500. Then followed a series of communications in which mortgagors demanded the entire balance of the proceeds, and the McKay Company asserted the right to hold the sum of $500 until the buildings had been painted and repaired.

The first installment of interest fell due August 1, 1928, and was not paid. Appellee filed its bill on January 5, 1929, and it elected therein to apply the sum of $500 withheld by it in reduction of the principal amount of the loan to $5,000. The appellants have at all times taken the position that the appellee was not entitled so to do, but should have used a portion of the sum withheld in satisfaction of the interest, and paid the balance to the appellants. Appellants repeatedly made this request, and consistently maintained this attitude during the progress of the case.

The controversy wages around this point. The appellants strenuously arguing that on account of the state of the pleadings appellee should not have been permitted to introduce evidence about an alleged independent agreement to withhold $500 until the painting and repairing on the premises had been completed. We are disposed to consider this matter on the merits, rather than on technical grounds. The appellant Salinger was the agent of the other appellants to secure the loan, and acted with full authority to that end. The Hart Company had no authority in the matter, except as directed by Salinger. It was in no sense a general agent, of which fact the McKay Company had full knowledge. All the evidence considered, there is a complete absence of any showing that the appellants ever entered into any agreement that the sum of $500 might be retained by the lender until the painting and repairing on the premises was completed. Mr. Salinger offered to expend this sum provided a provision was incorporated in the mortgage to the effect that $100, or any multiple thereof, might be paid on the mortgage on any interest due date. In response, the mortgage papers came forward for execution without such a provision, and further provided for the loan of $5,500 with no provision with respect to repairs. The mortgage embodied no such an agreement, and the evidence fails to show that the appellants ever otherwise agreed that $500 should be withheld until the painting and repairing was done. It does indicate the willingness of the borrowers to have this work done after the proceeds of the loan have been turned over, but that is not relied upon as justifying the application of the sum withheld in reduction of the principal sum secured by the mortgage. It is most apparent that the parties never reached an understanding on this subject, and, consequently, the mortgage executed must be regarded as expressive of the final and complete agreement.

The case pleaded was one on the mortgage, the foreclosure of which was prayed. There was no provision in the mortgage that $500 of the loan might be withheld, and such terms could not be written into the agreement by the bringing of the suit. Likewise, a court of equity cannot properly declare that the parties have entered into a certain contract, when in fact they have not.

The appellee had in its hands the above-mentioned sum belonging to appellants at the time the first installment of interest became due on August 1, 1928, and also at the time the suit was filed. The money in its hand was more than sufficient to pay the interest. Under these circumstances, appellee's duty was plain, to apply the funds in its possession in payment of the interest due, in response to the demand of appellants. It was interest, not principal, that was due. Even if there had existed a matured obligation with respect to both interest and principal, which there was not, it would still have been incumbent upon the creditor to apply the fund available first in payment of the interest. Bidwell v. George B. Douglas Trading Co. (C. C. A.) 183 F. 93; Ohio Savings Bank & Trust Co. v. Willys Corp. et al. (C. C. A.) 8 F.(2d) 463, 44 A. L. R. 1162. It could not properly apply it in reduction of the principal amount of the loan, which had not matured, and then invoke the acceleration clause of the mortgage by asserting that interest due was unpaid, and therefore the entire loan was due and the foreclosure of the mortgage timely. Savings Bank v. Asbury, 117 Cal. 96, 48 P. 1081, 1083; Ruby v. Edwards, 89 Okl. 253, 214 P. 915, 916; Brinton v. Johnson, 41 Idaho, 583, 240 P. 859; Brinton v. Johnson, 35 Idaho, 656, 208 P. 1028; Mason v. Griffith, 281 Ill. 246, 118 N. E. 18; Bartholf v. Bensley, 234 Ill. 336, 84 N. E. 928; 41 Corpus Juris, 849.

Foreclosure must be in compliance with the terms of the contract. No default under either the mortgage or any separate agreement is here to be found, and, consequently, no right of foreclosure existed at the time of the institution of the suit. Pratt v. Beiseker, 17 N. D. 243, 115 N. W. 835; Laselle et al. v. Leland et al. (C. C. A.) 298 F. 275.

The decree entered in the court below is reversed, and the cause remanded, with directions to enter a decree (1) dismissing the bill without prejudice to the right of appellee to take such further action as may be warranted by the circumstances, and (2) finding for appellants on their cross-bill.